# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.    MJ22-026 |
| One (1) residence, as more fully described in Attachment A. | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One (1) residence, as more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of, and Possession with Intent to Distribute, Controlled Substances |

The application is based on these facts:

✓ See Affidavit of DEA Special Agent Joseph M. Parker continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Joseph M. Parker, DEA Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 1/20/22 _____

_____
*Judge's signature*

City and state: Seattle, Washington

S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found.

For physical locations, this includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location described below.

### Residence

**Target Residence:** The Target Residence is a single-story house, beige in color, positioned on the same lot to the rear of a blue single-story house (17022 35th Ave S, SeaTac, WA). The Target Residence has a purple picnic table directly out front of the front door. The Target Residence does not have any numerical markings on the front of the building. The Target Residence has a gray front door facing to the south. The Target Residence is positioned to the east of the blue single-story house.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## (ITEMS TO BE SEARCHED AND SEIZED)

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1):

1. Controlled Substances and controlled substance analogues.

2. Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3. Drug Transaction Records: Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4. Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5. Cash and Financial Records: Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6. Photographs/Video: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7. Weapons, including firearms, magazines, ammunition, and body armor.

8. Codes: Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9. Property Records: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10. Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11. Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12. Evidence of Personal Property Ownership: Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13. Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:
    a. Employment records: paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.
    b. Savings accounts: statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.
    c. Checking accounts: statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.
    d. Loan Accounts: financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.
    e. Collection account statements and other-related records.
    f. Certificates of deposit: applications, purchase documents, and statements of accounts.
    g. Credit card accounts: credit cards, monthly statements, and receipts of use.
    h. Receipts and records related to gambling wins and losses, or any other contest winnings.
    i. Insurance: policies, statements, bills, and claim-related documents.
    j. Financial records: profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.     All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.     Negotiable instruments, jewelry, precious metals, and financial instruments.

17.     Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.     Correspondence, papers, records, and any other items showing employment or lack of employment.

19.     Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.     Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

22.     Digital computing devices, *e.g.*, desktop and laptop computers and table devices; digital storage devices, *e.g.,* external hard drives and USB thumb drives, and; optical and magnetic storage media, *e.g.,* Blue Ray discs, DVDs and CDs.

23.     Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1

24.    Cell Phones and other digital communication devices for evidence, fruits, and/or instrumentalities of the above-referenced crimes, specifically:

a.    Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.    Stored list of recent received, sent, or missed calls;

c.    Stored contact information;

d.    Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), RVs and other vehicles, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or coconspirators, including any embedded GPS data associated with these photographs; and

e.    Stored text messages that are evidence of the above-listed federal crimes or that may identify the user of the seized phones and/or coconspirators, including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or other similar messaging services where the data is stored on the telephone

ATTACHMENT B
Page 4 of 4
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT OF JOSEPH M. PARKER

STATE OF WASHINGTON        )
                           )      ss
COUNTY OF KING             )

I, Joseph M. Parker, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since July 2017.  In my capacity as a Special Agent, I investigate violations of the Controlled Substances Act, and related criminal offenses.  I am currently assigned to the Seattle Field Division, Seattle Division Office, HIDTA Interdiction Group D-22.

2.      Prior to becoming a Special Agent, I worked as a Police Officer in the State of Illinois for Glendale Heights Police Department from 2013 to 2015, and for the Elgin Police Department from 2015 to 2017.  To become a Police Officer, I attended the Suburban Law Enforcement Academy at the College of DuPage and completed 480 hours of basic training instruction.  While working as a Police Officer, I received an additional 40 hours of training in basic investigations and 40 hours of training to become certified as a gang enforcement specialist.  To become a Special Agent, I attended Basic Agent Training in Quantico, Virginia, graduating in July 2017.  I have completed over 800 hours of instruction to include focus on criminal investigations, surveillance, undercover operations, drug identification, firearms, defensive tactics, legal review, drug trafficking organizations (DTOs) and transnational criminal organizations (TCOs).

3.      During my career, I have been involved in numerous narcotics arrests as either the primary or assisting officer/agent.  I have participated in investigations involving organizations trafficking controlled substances that have resulted in arrests of drug traffickers and seizures of controlled substances.  In addition, I have participated in several wire intercept investigations.  Because of this experience and training, I am familiar with common methods of investigating drug trafficking and manufacturing

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

organizations, and have become familiar with the methods of operation of drug
traffickers and manufacturers, including, but not limited to: their methods of importing,
exporting, storing, concealing, and packaging drugs; their methods of transferring and
distributing drugs; their use of cellular telephones and telephone pagers; their use of
numerical codes, code words, and counter surveillance techniques; and other methods of
avoiding detection by law enforcement.

4.      I am familiar with the various methods of packaging, delivering,
transferring, and laundering drug proceeds.  Additionally, through training and
experience, I can identify illegal drugs by sight and texture.  I am trained to use a field
test kit to identify the presumptive presence of controlled substances.  I have become
familiar with common slang terms and codes used by drug traffickers and their associates
to refer to drugs, money, guns, vehicles, compartments, and other things related to their
drug trafficking.  I have learned how they attempt to thwart law enforcement by using
code terms, multiple cell phones, concealed compartments, "stash houses," and other
means.  I have become familiar with the ways in which drugs commonly are transported,
stored, and sold, and in what quantities and at what prices in this area, and how members
of a conspiracy communicate with each other.  I am also familiar with common ways in
which drug traffickers attempt to profit from their illegal activities, by hiding drug
proceeds in various places to conceal the illegal source or their ownership, including
hiding and transporting bulk cash, sending funds through wire transfers or bank accounts
in other persons' names, or investing in assets placed in other persons' names.
Throughout my law enforcement career, I have spoken with, worked with, and gained
knowledge from numerous experienced federal, state, and local narcotics officers.

5.      Because of my personal participation in this investigation and because of
information provided to me by other agents and officers, I am familiar with the facts and
circumstances of this investigation.  My familiarity with this investigation is further
based on information relayed to me by other law enforcement personnel, discussions with
other experienced officers, detectives, and agents, review of law enforcement reports, and

interviews of witnesses.  My experience in investigating drug offenders, my education, my conversations with senior drug agents, and my specialized training formed a basis of opinions and conclusions set forth below.

6.      The facts in this affidavit and in the attached document, are based on my training and experience, and information obtained from other agents, detectives, analysts, and witnesses. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware that relate to this investigation.

## PURPOSE OF THIS AFFIDAVIT

7.      This Affidavit is submitted in support of an application to search the residence located at 17022 35th Ave S, SeaTac, Washington, also being identified as 17022 35th Ave S #B, SeaTac, Washington (hereinafter, the "**TARGET RESIDENCE**"), as further described in Attachment A, attached hereto and incorporated by this reference as if set forth fully herein.

8.      As set forth below, there is probable cause to believe that the **TARGET RESIDENCE** contains evidence, fruits, and instrumentalities of the following crimes: distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1).

9.      The information set forth in this Affidavit consists of information I have gathered and observed firsthand through the course of this investigation to date, as well as information relayed to me by other law enforcement officers, my review of law enforcement reports, and interviews of witnesses. Since this Affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the issuance of such warrant.

## SUMMARY OF PROBABLE CAUSE

10.     On January 20, 2022, agents attempted to conduct a buy/bust operation in Seattle, WA, utilizing a Confidential Source (CS).  Prior to the buy/bust operation

AFFIDAVIT OF SA PARKER - 3
USAO 2020R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 beginning, agents searched the CS's person and vehicle. CS's person and vehicle were

2 searched by HSI SA Clammer and HSI SA Hardin and found to be clear of weapons,

3 narcotics, money, and any other contraband.[1]

4       11.    The buy was set up through the CS speaking to a person in Mexico

5 identified as Hilario LUCERO-Espinoza. CS and LUCERO-Espinoza arranged for the

6 purchase of 15,000 fentanyl M30 pills and 20 pounds of methamphetamine for $102,500.

7 CS did not speak with anyone locally prior to the meet as the arrangements were made

8 through LUCERO-Espinoza.

9       12.    LUCERO-Espinoza told the CS that there would be two different couriers

10 arriving with different amounts of narcotics to provide to the CS. LUCERO-Espinoza

11 explained that the two couriers would be able to supply the previously agreed upon

12 amount of narcotics to the CS.

13       13.    The CS told LUCERO-Espinoza that s/he did not want to divide their

14 money and provide it to two separate associates of LUCERO-Espinoza so s/he would

15 wait for both couriers to arrive at the meet location to obtain the full agreed upon amount

16 of narcotics prior to delivering any money to LUCERO-Espinoza's associates.

17       14.    The controlled buy was initially set to be conducted at 16402 Military Road

18 S, Seattle, WA, 98188, but ultimately was set for a meet at the Safeway located at 4011 S

19 164th St, Seattle, WA, 98118. The Safeway is directly across the street from the original

20 meet location.

21       15.    CS arrived at the meet location and contacted LUCERO-Espinoza to advise

22 him that CS was in the parking lot. At approximately 11:22 am, LUCERO-Espinoza and

23 CS spoke and CS was advised that an associate of LUCERO-Espinoza's would be

24 arriving within three minutes.

25

26 _____

27 [1] This Confidential Source has consistently provided reliable information in the past that has been independently
corroborated by investigators. CS has no criminal history. CS is working for immigration benefits and monetary

28 gain.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     At approximately 11:24 am, a 2010 gray Volkswagen sedan WA/BTR7047 approached the CS's vehicle. Agents were in position to conduct surveillance and observed CS exit her/his vehicle and approach the Volkswagen sedan. The CS got into the Volkswagen sedan and met with the driver and sole occupant of the vehicle, later identified as Jose Leonel GUICHO-Acosta, where s/he was able to confirm the presence of what s/he believed to be methamphetamine and fentanyl pills.

17.     GUICHO-Acosta appeared to be nervous and did not want to wait around in the parking lot for the other courier to arrive. The CS exited the Volkswagen sedan and contacted LUCERO-Espinoza to determine the wait time for the second courier. Simultaneously, GUICHO-Acosta drove away from CS and left the parking lot traveling southbound.

18.     Agents followed GUICHO-Acosta. The CS confirmed the presence of narcotics in the Volkswagen sedan. Once agents received confirmation of narcotics within the vehicle, they initiated a traffic stop on the Volkswagen sedan. The Volkswagen sedan pulled into a driveway at the same time agents activated their emergency lights. Agents took GUICHO-Acosta into custody without incident. The driveway that GUICHO-Acosta pulled into was at 17022 35th Ave S, SeaTac, WA, and is at the front of two residences on this property, the second of which is the **TARGET RESIDENCE**.

19.     GUICHO-Acosta was handcuffed and searched incident to arrest. Three keys were located on his person. GUICHO-Acosta was Mirandized in Spanish by a proficient Spanish speaker (GS Dan Olson). GUICHO-Acosta acknowledged his rights by shaking his head up and down, indicating he understood his rights. When asked if he wanted to speak to agents, GUICHO-Acosta shook his head left and right, indicating he did not want to speak.

20.     A narcotics K9 alerted to presence of the odor of narcotics emitting from the rear passenger side of the Volkswagen sedan. Agents searched the Volkswagen sedan and located a black duffle bag in the rear passenger seat area of the vehicle that contained

large Ziploc bags holding clear, crystal-like substances as well as a cylindrical saran wrapped package holding blue pills.

21.     Based off my training and experience, I could immediately recognize the clear, crystal-like substance to be packaged and appear as prepared for bulk methamphetamine trafficking.  I also could immediately recognize the blue pills to be packaged and appear as prepared for bulk M30 fentanyl pill trafficking.  The clear, crystal-like substance field tested positive for methamphetamine.  For officer safety purposes, agents did not field test the suspected fentanyl pills, but as previously mentioned, I could immediately recognize the blue pills to be commonly trafficked M30 fentanyl pills.

22.     During the rest of the search of the Volkswagen sedan, agents also located bulk cash in the glovebox of the vehicle.

23.     The CS never met with a second courier after GUICHO-Acosta left the parking lot.  However, surveillance units in the area did observe a suspicious vehicle that could have been associated to the second courier.  Agents were unable to conduct a traffic stop on the vehicle as it was lost in the midst of traffic.  Agents are unable to verify if the remaining portion of the narcotics would have actually been in this vehicle.  The CS's person and vehicle were searched by HSI SA Clammer and HSI SA Hardin and found to be clear of weapons, narcotics, money, and any other contraband.

24.     Agents made contact with a subject at the front house located on the same lot (17022 35th Ave S #A, SeaTac, WA).  This subject acknowledged that he had previously seen the Volkswagen sedan parked at the **TARGET RESIDENCE** and that he was aware the subject associated to the vehicle used to live at **TARGET RESIDENCE** for about eight months, but had not seen him in the past month or so.  Agents showed this subject a picture of GUICHO-Acosta.  The subject advised that GUICHO-Acosta was the person he recognized as being a previous tenant of **TARGET RESIDENCE** and associated with the Volkswagen sedan.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     The subject granted agents consent to search the front house located at 17022 35th Ave S, SeaTac, WA to include a narcotics K9 sniff.  During the consent search of the front house, agents did not locate anything indicative of drug trafficking and the narcotics K9 did not alert on any locations within the front house.

26.     After the arrest of GUICHO-Acosta, agents received information from one or more sources (believed to be reliable based on reliable information provided in the past) that LUCERO-Espinoza's couriers had counter surveillance established at the meet location and were watching the initial meet occur.[2]

27.     These reliable sources advised agents of information that was not available to the original CS.  For example, the original CS never left the parking lot of the meet location unless s/he was followed by agents, so agents are aware of where the original CS traveled to and from.  However, one or more of the reliable sources were aware of the fact that agents had stopped GUICHO-Acosta at the **TARGET RESIDENCE**.  It is believed this information was obtained when the counter surveillance drove past the **TARGET RESIDENCE** during the traffic stop in the driveway and LUCERO-Espinoza's associates were able to observe several agents as well as GUICHO-Acosta.

28.     One or more of these reliable sources have stated that because counter surveillance observed agents at **TARGET RESIDENCE**, that LUCERO-Espinoza's TCO believed that the narcotics and/or money in the apartment was likely being seized as well.  This information was not passed along to the original CS until after agents cleared the initial traffic stop and arrest of GUICHO-Acosta, so there has been some time during which the **TARGET RESIDENCE** may have been accessible to key holders.  However, agents are currently surveilling **TARGET RESIDENCE** and have not observed anyone enter the **TARGET RESIDENCE**.

29.     Agents spoke to the landlord of the property who supplied a copy of the lease agreement to **TARGET RESIDENCE** which indicates that the tenant is Gamaliel

_____

[2] These reliable sources are also cooperating for immigration consideration.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

LUCHI-Rivera.  The landlord advised that even though the lease agreement indicates that the only listed address is 17022 35th Ave S, SeaTac, WA, 98188, there is in fact a second building, the **TARGET RESIDENCE**, on the back of the property on the same parcel. The landlord advised that the only occupant that should be living in the **TARGET RESIDENCE** is LUCHI-Rivera.  The landlord advised that LUCHI-Rivera told him that his "friend" was only staying at the **TARGET RESIDENCE** for a short time and was not living there permanently.  The landlord told LUCHI-Rivera that since there was a breach of the contract, LUCHI-Rivera would have to clear out the **TARGET RESIDENCE**.  LUCHI-Rivera told the landlord that he would be able to come clean out **TARGET RESIDENCE** by January 21, 2022.

## COMMON CHARACTERISTICS OF DRUG TRAFFICKING

30.     As a result of my training and experience, and based on my consultation with other agents and law enforcement officers, I have an understanding of the manner in which narcotics are distributed and the various roles played by individuals and groups in their distribution. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations. I am also familiar with the manner in which drug traffickers will use weapons to protect their drug activities and further its goals.

31.     Based upon my training, experience, and conversations with other experienced officers and agents, I know that:

a.      Drug trafficking conspiracies usually take place over several months or years, and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

b.      Persons involved in the distribution of controlled substances typically will obtain and distribute drugs on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug dealers will

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

maintain an "inventory," which will fluctuate in size depending upon the demand for and the available supply of the product.

c.     It is common for drug dealers to possess narcotics, drug paraphernalia, and other items which are associated with the sale and use of controlled substances such as scales, containers, cutting agents/substances, and packaging materials in their residences, stash houses, storage units, garages, outbuildings and/or vehicles on their property.

d.     Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their product. Drug traffickers usually maintain these photographs or videos in their possession.

e.     It is a common practice for drug traffickers to maintain records relating to their drug trafficking activities in their residences, stash houses, storage units, garages, outbuildings and/or vehicles. Because drug traffickers in many instances will "front" (i.e., sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" these items from their suppliers, such record keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's suppliers and distributors, telephone and address listings of clients and suppliers, and records of drug proceeds. These records are commonly kept for an extended period of time.

f.     Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation and distribution of controlled substances. These documents, whether in physical or electronic form, are maintained where the traffickers have ready access to them. These documents include travel records, receipts, airline tickets, auto rental

AFFIDAVIT OF SA PARKER - 9
USAO 2020R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agreements, invoices, and other memorandum disclosing acquisition of assets and personal or business expenses. I also know that such records are frequently maintained in narcotics traffickers' residences, stash houses, storage units, garages, outbuildings and/or vehicles.

g. Drug traffickers often maintain large amounts of US currency in order to maintain and finance their ongoing illegal drug trafficking business.

h. It is common for drug dealers to secret drugs, currency and other valuable items representing the proceeds of drug sales in secure locations within their residences, stash houses, storage units, garages, outbuildings and/or vehicles on the property in order to prevent the theft of such items by other persons or the seizure of such items by law enforcement. These secure locations typically include other residences also known as "stash houses," storage lockers, safes, portable safes, vaults, or other locked containers (sometimes requiring passwords or codes to open), as well as specially constructed concealed compartments such as those often found in "load cars" used specifically to facilitate drug trafficking.

i. It is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion, and control of businesses, residences, and/or vehicles in the residences, stash houses, storage units, garages, outbuildings and/or vehicles of drug traffickers. Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises also include canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, keys, financial papers, rental receipts and property ownership papers, personal and business telephone and address books and telephone toll records, and other personal papers or identification cards in the names of subjects involved in the criminal activity being investigated.

j. Drug traffickers commonly have in their possession, that is, on their person, at their residences, stash houses, storage units, garages, outbuildings and/or

vehicles, firearms, ammunition, and other weapons, which are used to protect and secure their property. Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time. Firearms can be acquired both legally and unlawfully, without official / traceable documentation. Persons who acquire firearms from Federal Firearms Licensees, through deliberated fraud and concealment, often will also acquire firearms from private parties and other sources unknown to ATF. Firearms or ammunition are often secreted at other locations within their residential curtilage, and the identification of these firearms will assist in establishing their origins. Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence, or in vehicles that they own, use, or have access to.

k.      Drug traffickers use mobile electronic devices including cellular telephones and other wireless communication devices in connection with their illegal activities in order to set up meetings with coconspirators, conduct drug transactions, or to arrange for the transportation drugs or drug proceeds. As described below, such equipment often contains evidence of these illegal activities.

l.      Traffickers of controlled substances commonly maintain addresses, vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers, and associates in the trafficking organization, and it is common to find drug traffickers keeping records of said associates in cellular telephones and other electronic devices. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business. Traffickers frequently change their cellular telephone

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

m.     Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, many drug dealers I have contacted have used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

i.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | ii. | The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates. The information is also valuable in the firearms context because it will identify telephones used by other individuals who are part of illegal firearms transactions, and confirm the date and time of contacts. |

iii. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

iv. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or

AFFIDAVIT OF SA PARKER - 13
USAO 2020R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     GPS information embedded in them. Geocode information is typically

2     the longitude and latitude where the photo was taken. Showing where

3     the photo was taken can have evidentiary value. This location

4     information is helpful because, for example, it can show where

5     coconspirators meet, where they travel, and where assets might be

6     located.

7     v.     Based on my training and experience in investigating numerous

8     firearms possession and trafficking offenses, I am aware that when

9     individuals who are prohibited from legally possessing firearms seek

10     to acquire firearms, they typically seek to obtain the firearms from

11     private sellers. A common way in which these types of private firearm

12     sales, also referred to as "street sales," are transacted is via electronic

13     communications such as text message, email, and/or telephone calls.

14     I know that cell phones are frequently used to arrange such

15     transactions because of the flexibility and mobility they offer. I am

16     further aware that when individuals are offering items of value for

17     sale, such as firearms, it is common for them to take a photograph of

18     the item and send it via text message or email to an interested party

19     for their review, or to take a photograph of it to post/advertise it via

20     social media or the internet. During numerous investigations of

21     firearms sales, I have found it to be common for buyer's or seller's

22     cell phones to contain photographs of the firearms that were bought

23     or sold.

24     vi.     Stored address records are important evidence because they show the

25     user's close associates and family members, and they contain names

26     and nicknames connected to phone numbers that can be used to

27     identify suspects.

28 //

AFFIDAVIT OF SA PARKER - 14
USAO 2020R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

32.     Based on investigation to date, summarized above, there is probable cause to conclude that there is evidence linked to drug trafficking offenses, specifically, distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), located within **TARGET RESIDENCE**.  There is also probable cause to conclude that the evidence, fruits, and instrumentalities of these offenses, as set forth in Attachment B, will be found in the **TARGET RESIDENCE**, described in Attachment A.

_____
Joseph Parker
Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on the 20th day of January 2022.

_____
S.  KATE VAUGHAN
United States Magistrate Judge

AFFIDAVIT OF SA PARKER - 15
USAO 2020R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found.

For physical locations, this includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location described below.

### Residence

**Target Residence:** The Target Residence is a single-story house, beige in color, positioned on the same lot to the rear of a blue single-story house (17022 35th Ave S, SeaTac, WA). The Target Residence has a purple picnic table directly out front of the front door. The Target Residence does not have any numerical markings on the front of the building. The Target Residence has a gray front door facing to the south. The Target Residence is positioned to the east of the blue single-story house.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## (ITEMS TO BE SEARCHED AND SEIZED)

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1):

1. Controlled Substances and controlled substance analogues.

2. Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3. Drug Transaction Records: Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4. Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5. Cash and Financial Records: Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6. Photographs/Video: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7. Weapons, including firearms, magazines, ammunition, and body armor.

8. Codes: Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9. Property Records: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.     Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:
            a.     Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.
            b.     Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.
            c.     Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.
            d.     Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.
            e.     Collection account statements and other-related records.
            f.     Certificates of deposit:  applications, purchase documents, and statements of accounts.
            g.     Credit card accounts:  credit cards, monthly statements, and receipts of use.
            h.     Receipts and records related to gambling wins and losses, or any other contest winnings.
            i.     Insurance:  policies, statements, bills, and claim-related documents.
            j.     Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

14.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.     All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.     Negotiable instruments, jewelry, precious metals, and financial instruments.

17.     Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.     Correspondence, papers, records, and any other items showing employment or lack of employment.

19.     Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.     Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

22.     Digital computing devices, *e.g.*, desktop and laptop computers and table devices; digital storage devices, *e.g.*, external hard drives and USB thumb drives, and; optical and magnetic storage media, *e.g.*, Blue Ray discs, DVDs and CDs.

23.     Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills

ATTACHMENT B
Page 3 of 4
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24. Cell Phones and other digital communication devices for evidence, fruits, and/or instrumentalities of the above-referenced crimes, specifically:

      a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b. Stored list of recent received, sent, or missed calls;

      c. Stored contact information;

      d. Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), RVs and other vehicles, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or coconspirators, including any embedded GPS data associated with these photographs; and

      e. Stored text messages that are evidence of the above-listed federal crimes or that may identify the user of the seized phones and/or coconspirators, including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or other similar messaging services where the data is stored on the telephone

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970